IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

WILLIAM MANIS,

    Petitioner,  :  Case No. 1:14-cv-057

 - vs -        District Judge Susan J. Dlott
            Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
 Institution,
             :
    Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case was brought by Petitioner William Manis *pro se* under 28 U.S.C. § 2254 to obtain relief from his convictions in the Butler County Common Pleas Court on charges of rape and kidnapping (Petition, Doc. No. 1, PageID 1). He pleads the following grounds for relief:

> **Ground One:** When a Trial Court accepts a plea of guilty to criminal charges from a Defendant who is known to be mentally ill, the Court violates not only Criminal Rule 11, but also the Defendants Right to Due Process of Law under the 5th and 14th Amendments of the U.S. Constitution and Article 1, Section 16 of the Ohio Constitution.
>
> The Law is well-settled that administrative determinations, such as the one from the Social Security Administration are entitled [to] *res judicata* effect.
>
> **Ground Two:** When a Trial Court denies a Pre-sentence Motion to Withdraw a Defendants Plea of Guilty, based on a claim of inter alia Actual Innocence, the Defendant is denied his Constitutional Right to a Fair Trial, his Right to Due Process, and his Right to have his case heard and decided by a jury, in violation of the 5th and 14th Amendments of the U.S. Constitution, and Article 1,

1

Section 5 and 16 of the Ohio Constitution. These Constitutional Violations are dramatically enhanced when the Defendant is Mentally ill.

A jurist of reason would agree that the actions of the State's representatives did not protect the constitutional rights of this Petitioner. In fact, a jurist of Reason, Justice O'Neil of the Ohio Supreme Court dissented on that Court's decision in regard to this issue.

**Ground Three:** When a Defense Attorney allows his Client to incriminate himself in a Psychiatric evaluation for which the Attorney was not present and that Attorney formerly represented the alleged victim's family and openly shows sympathy for the alleged victim, his performance falls below the standard of reasonableness and prejudice results from these errors, which violates the Client's Constitutional Rights under the 5th, 6th, and 14th Amendments of the U.S. Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.

At no time in the process of this Petitioner's prosecution did Defense Counsel ever discuss any defense with his client. The records shows that the petitioner stated in court, during the court's hearing on his Motion to Withdraw Plea on March 8, 2011, that there was never any discussion of a defense.

(Taken from Transcript of Proceedings, Motion to Withdraw Plea and Disposition dated March 8, 2011 Page 14, lines 7-12.)

Q: You've discussed potential defenses in this case, correct?
A: NO.
Q: You've—
A: NO, my answer would be no. We have not discussed a defense in this case.

The petitioner stated "no" three times, even interrupting the prosecutor to make a declarative statement, that no defense had ever been discussed. Defense Counsel made no attempt to either object to that statement or disprove the petitioner's claim. It is obvious that counsel could not justify his inaction, or his improper actions which have clearly prejudiced this petitioner.

**Ground Four:** When an issue has been decided by an administrative tribunal, that prior determination is entitled to *res judicata* effect, and the relitigation of that issue, and the effect of

that issue on the case at Bar, violate the Double Jeopardy clause of the United States and Ohio Constitution.

**Ground Five**: When the record is clear that the mental competency of the Defendant is called into question, the Court must appoint the Defense its own expert to determine competency, and to assist Defense Counsel to prepare a defense. Failure to do so violates the 5th, 8th, and 14th Amendments of the U.S. Constitution.

My Trial Counsel did not just simply "Not request" the court to appoint his client its own Mental Health Expert. He told the Court Not to appoint a Mental Health Expert to assist in my Defense, as recorded in the trial Transcripts. Taken from Transcript of Proceedings, Competency Hearing, Dated January 7, 2011 on page 6 Lines 9, 10, and 11. Where Trial Counsel Mr. Jeremy Evans says, I'll put the court on notice. We do not intend to request a second opinion on either the Competency or the NGRl evaluation.

The Courts have in place Experts to assist in the Defense of the Mentally Disabled.

**Ground Six:** When all of the offenses are of similar import and therefore Allied Offenses, as they all stem from the same alleged continuous conduct, the imposition of multiple punishments for those offenses, ran consecutively, Violates the Double Jeopardy Clauses of both the U.S. Constitution and the Ohio Constitution.

(Petition, Doc. No. 1).

**Procedural History**

Manis was indicted by the Butler County Grand Jury on December 2, 2010, on two counts of kidnapping and nine counts of rape. He pled not guilty by reason of insanity to all charges. On motion of defense counsel, Manis was evaluated both as to his competency to stand trial and his sanity at the time of the offenses. Following a report, the trial court held a competency hearing on January 7, 2011, at which defense counsel stipulated to the competency finding. Three weeks later, Manis withdrew his NGRI pleas and pled guilty as charged in return

for the prosecutor's agreement to remain silent on the issue of sentencing.

Then, on March 4, 2011, Manis sought to withdraw his guilty pleas and asserted his innocence. At a hearing on the motion, he testified he has an anxiety disorder that caused him to feel anxious and pressured at the time of the plea. The trial judge denied the motion to withdraw, merged the two kidnapping charges, and sentenced Manis to three years each on the remaining counts of conviction for a total of thirty years.

Manis appealed, proceeding *pro se* after his counsel filed an *Anders* brief and withdrew. The Twelfth District Court of Appeals then affirmed. *State v. Manis,* 2012-Ohio-3753, 2012 Ohio App. LEXIS 3310 (12th Dist. Aug. 20, 2012). The Ohio Supreme Court declined jurisdiction over a subsequent appeal. *State v. Manis,* 134 Ohio St. 3d 1420 (2013).

On November 13, 2012, Manis moved to reopen his direct appeal to assert claims of ineffective assistance of appellate counsel for omission of three asserted assignments of error. The Twelfth District denied reopening and the Supreme Court again declined jurisdiction. This habeas corpus petition followed on January 6, 2014.

## Analysis

**Ground One: Inability of the Mentally Ill to Plead Guilty**

In his First Ground for Relief, Manis argues his guilty plea was not constitutional because he is mentally ill. In fact, in his Reply he asserts "[t]he basic Constitutional question being raised here, is whether a Mentally-impaired individual as a criminal defendant, can knowingly, intelligently and voluntarily enter into a plea agreement under any circumstances." (Doc. No.

4

13, PageID 422.)

A plea of guilty or no contest is valid if it is entered voluntarily and intelligently, as determined by the totality of the circumstances. *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984). The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case. *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady*, 397 U.S. at 755. In order for a guilty plea to be constitutional it must be knowing, intelligent, voluntary, and done with sufficient awareness of the relevant circumstances and likely consequences. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia*, 991 F.2d at 326–28. Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326–27.

A court cannot rely on the petitioner's alleged "subjective impression" "rather than the bargain actually outlined in the record," for to do so would render the plea colloquy process

meaningless. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). If the plea colloquy process were viewed in this light, any defendant who alleged that he believed the plea bargain was different from that outlined in the record would have the option of withdrawing his plea despite his own statements during the plea colloquy indicating the opposite. *Id.*

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983). When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

In this case the trial judge, on motion of Manis' attorney, had him evaluated for competency to stand trial and for his sanity at the time of the offense. After receiving that report, Manis' attorney stipulated to its conclusions, to wit, that Manis was competent to stand trial. As the trial judge observed, a defendant's competency to enter a guilty plea is to be adjudged by the same standards as his competency to stand trial. *Godinez v. Martin*, 509 U.S. 389, 397-98 (1993). That factual finding is entitled to deference in this Court unless it is rebutted by clear and convincing evidence. *Mackey v. Dutton,* 217 F.3d 399, 413 (6th Cir. 2000).

Manis offers no evidence that he was not competent to plead other than his Social Security Disability determination which he claims is entitled to *res judicata* effect. The question of whether a finding by a federal court or administrative agency is entitled to *res judicata* effect

is a question of state law. There is no federal constitutional obligation on the States to grant *res judicata* effect to such findings. *Gillispie v. Warden,* 771 F.3d 323 (6th Cir. 2014).

Moreover, the Twelfth District held that this particular Social Security determination was not entitled to *res judicata* effect in this case because the issues being decided were not the same.

> First, appellate counsel was not ineffective for failing to argue that res judicata barred the trial court from finding appellant competent to stand trial. Res judicata did not apply, as appellant's disability status with the Social Security Administration did not resolve the issue of whether appellant was legally competent to stand trial. See R.C. 2945.37; *State v. Smith,* 89 Ohio St.3d 323, 329 (2000) ("the term 'mental illness' does not necessarily equate with the definition of legal incompetency").

*State v. Manis,* Case No. CA-2011-03-059 (12th Dist. Jan. 8, 2013)(unreported, copy at Doc. No. 6-1, PageID 253.) In general, the Social Security Administration's determination that Manis was entitled to SSI payments because of his mental condition is a determination that he was unable to be employed in substantial gainful employment as a result of that disability and in no way a determination that he could not be found competent to stand trial or plead guilty to a crime.

Therefore the First Ground for Relief should be dismissed with prejudice on the merits.

**Ground Two: Right to Withdraw Guilty Plea**

In his Second Ground for Relief, Manis asserts that he had a constitutional right to withdraw his guilty plea, in part because he is innocent and in part because the plea was not knowing, intelligent, and voluntary.

As Respondent points out, there is no constitutional right to withdraw a guilty plea. Ohio

R. Crim. P. 32.1 provides:

> A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

The fact that a motion to withdraw is made before sentence does not imply that it must be granted, either under state or federal law. Rather, the proper process is the one followed here – a hearing in the trial court to consider the grounds for withdrawal. The trial judge conducted such a hearing and concluded that Manis' guilty plea was knowing, intelligent, and voluntary. That conclusion was affirmed by the Twelfth District which held:

> [*P13]  Here, appellant does not argue that the trial court failed to explain his constitutional rights, the consequences of his pleas, or the maximum sentence involved. Instead, he argues that his pleas were coerced and therefore were not voluntary. Appellant first argues that counsel took advantage of his "weakened state of mind," and pressured him into pleading guilty to receive a lighter sentence. This argument lacks merit.
>
> [*P14]  Before the trial court accepted appellant's guilty pleas, it specifically asked appellant whether he was thinking clearly, to which appellant replied affirmatively and without hesitation. The trial court then engaged appellant in the following exchange:
>
> THE COURT: Are you satisfied with the advice, competence and counsel rendered to you by Mr. Evans with respect to his representation of you in this matter?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any questions of him or me at this time?
>
> THE DEFENDANT: No.
>
> THE COURT: Are you asking the Court to accept your pleas of guilty to these 11 offenses, that being two counts of kidnapping and nine counts of rape as charged in the indictment in this matter?

THE DEFENDANT: Yes.

THE COURT: Before I do so, Mr. Manis, I want to inquire of you, has anybody threatened or coerced you in any way to cause you to come in here today and tender these guilty pleas to the Court?

THE DEFENDANT: No.

THE COURT: * * * Has anybody else made you any promises in connection with your pleas of guilty here today?

THE DEFENDANT: No.

 [*P15]  Prior to entering his guilty pleas, appellant reiterated that he understood everything that the court said and acknowledged that he was knowingly, intelligently and voluntarily entering the pleas. Moreover, the plea forms signed by appellant the same day clearly stated, "I understand the nature of these charges and the possible defenses I might have. I am satisfied with my attorney's advice and competence. I am not under the influence of drugs or alcohol. No threats have been made to me."

 [*P16]  From this, it is clear that appellant had ample opportunity to address any potential coercion with the court, and there is nothing in the record to demonstrate that counsel coerced appellant's pleas, or that he was not thinking clearly at the time he entered them. Thus, we reject appellant's first argument.

 [*P17]  Appellant also claims that he did not expect to enter a plea at all during the hearing on January 28, 2011, and that he only did so because of last-minute pressure from his attorney.

 [*P18]  A review of the record reveals that appellant was entirely aware of the purpose of the plea hearing prior to entering his guilty pleas. During the hearing, the trial court presented each of appellant's plea forms, and confirmed that appellant had signed each document. The trial court then explained that the forms reflected appellant's intent to withdraw his former plea of not guilty and to enter pleas of guilty. Prior to discussing the effect of appellant's pleas on his constitutional rights, the trial court asked appellant whether he had a "full and fair opportunity to read, review, and discuss" the plea forms with his attorney. Appellant stated that he had, and confirmed that he was asking the court to accept his guilty pleas to all 11 charges in the indictment.

> **[*P19]** In sum, appellant's unsubstantiated claims that his attorney coerced him into pleading guilty are not sufficient to overcome the evidence to the contrary in the hearing transcript. As this is appellant's sole challenge to the Crim.R. 11 colloquy, we reject appellant's claim that his pleas were not knowing, voluntary, and intelligent.
>
> **[*P20]** Appellant's second assignment of error is overruled.

*State v. Manis, supra.*

The substance of Manis' claims seems to be that, although he admitted his guilt at the plea hearing and also admitted that he had discussed possible defenses with his trial attorney, both of those statements, made under oath, were false. Where a district court has scrupulously followed the required procedure under Fed. R. Crim. P. 11, "the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986), *quoting Moore v. Estelle*, 526 F.2d 690 (5th Cir. 1976). The same applies to pleas entered in state court proceedings.

Because the Twelfth District found the guilty plea was knowing, intelligent, and voluntary, and Manis has offered no proof or authority to show that was an unreasonable determination based on the evidence before the state courts, his Second Ground for Relief is without merit.

**Ground Three: Ineffective Assistance of Trial Counsel**

In his Third Ground for Relief, Petitioner asserts his trial attorney provided ineffective assistance of trial counsel in four ways: (1) subjecting him to a competency evaluation at which counsel was not present and at which he could incriminate himself, 2) previously representing a

10

family member of the victim, 3) expressing sympathy toward the victim, and 4) failing to discuss his trial defenses.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is

a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

The Twelfth District Court of Appeals decided the first sub-claim of ineffective assistance of trial counsel as follows:

> [*P34] INEFFECTIVE ASSISTANCE OF COUNSEL
>
> [*P35] Appellant now claims that his trial counsel was ineffective for requesting that appellant submit to a psychiatric evaluation. Appellant argues that counsel put him in a position to incriminate himself by answering the psychiatrist's questions. This argument lacks merit.
>
> [*P36] First, by pleading guilty, appellant "waived the right to claim he was prejudiced by the ineffective assistance of counsel except to the extent that the defects complained of caused the plea to be less than knowingly, intelligently, and voluntarily made." *State v. Gray*, 12th Dist. Nos. CA2010-01-006, CA2010-04-024, 2010 Ohio 4949, ¶ 31. Appellant does not explain, nor do we see, how counsel's decision to request a psychiatric evaluation affected the knowing, voluntary, or intelligent nature of his pleas.
>
> [*P37] Even if we were to consider appellant's argument, we would not find that counsel was ineffective for requesting a psychiatric evaluation. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court of the United States established a two-part test to determine whether an appellant was denied the effective assistance of counsel. First, an appellant must establish that counsel's representation "fell below an objective standard of reasonableness," and secondly, that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.
>
> [*P38] Here, it was hardly unreasonable for appellant's attorney to request a psychiatric evaluation, given appellant's history of mental illness and severe personality disorders, for which he was not currently medicated, and which could have affected his ability to understand the nature of the charges against him or assist in his

> defense. Given the apparent reasonableness of counsel's request, it would not be necessary to consider the second prong of *Strickland*, because an appellant must prove both prongs in order to establish ineffective assistance of counsel. *Id.* at 697.
>
> [*P39] Under these circumstances, appellant's first assignment of error is overruled.

*State v. Manis,* 2012-Ohio-3753, 2012 Ohio App. LEXIS 3310 (12th Dist. Aug. 20, 2012).

Manis has not demonstrated that this decision is an objectively unreasonable application of *Strickland v. Washington, supra*. If a defendant pleads not guilty by reason of insanity, he cannot prevail on that defense without expert testimony that he is in fact not guilty by reason of insanity. Hence the evaluation of sanity at the time of the offense is material. With respect to the competency evaluation, Manis himself alleges he was incompetent to plead guilty. How could his attorney have gone forward to trial or plea without having an evaluation on that subject?

Manis' second and third sub-claims were raised on direct appeal as his Assignment of Error number 4 and decided by the Twelfth District as follows:

> [*P41] CONFLICT OF INTEREST.
>
> [*P42] In his last assignment of error, appellant argues that trial counsel had a conflict of interest, where counsel spoke to the state's witnesses, and had represented the victim's stepfather in a prior unrelated matter. Appellant also claims that his attorney was biased against him, because he allegedly told appellant that the victim "did not deserve what [appellant] did." This is essentially a secondary claim of ineffective assistance of counsel. *See State v. Gillard*, 78 Ohio St.3d 548, 1997 Ohio 183, 679 N.E.2d 276 (1997) (Sixth Amendment violation due to a conflict of interest).
>
> [*P43] First, we note that appellant did not raise the conflict of interest argument in his motion to withdraw his guilty pleas. *See State v. Von Allmen*, 2nd Dist. No. Civ.A.2004-CA-51, 2005 Ohio 1384, ¶ 18 (defendant not entitled to withdraw guilty plea due to alleged conflict of interest because he failed to raise the issue in motion to withdraw plea). *See also State v. Chaney*, 2nd Dist. No.

13

> 2011-CA-13, 2012 Ohio 3101, ¶ 17-18. Further, appellant has wholly failed to prove that the alleged conflict of interest affected the knowing, voluntary, or intelligent nature of his pleas. As previously discussed, a guilty plea waives all claims relating to ineffective assistance of counsel except to the extent that the defect caused the plea to be less than knowing, voluntary, and intelligent. *Gray*, 2010 Ohio 4949 at ¶ 31. Here, the alleged conflict does not fit this exception to the waiver rule.
> 
> [*P44] Based on the foregoing, we reject appellant's conflict of interest argument and overrule his fourth and final assignment of error.

*State v. Manis, supra.* In sum, the court of appeals held these conflict of interest claims were forfeited by not being made in the motion to withdraw the plea and waived by the guilty plea itself. This decision is not an unreasonable application of clearly established Supreme Court law. A valid, unconditional guilty or no contest plea waives all "constitutional violations occurring prior to a plea of guilty once the defendant enters his plea," including a challenge to the evidence supporting a conviction and any pre-plea constitutional violations, unless expressly preserved in a plea agreement or at a plea hearing. *United States v. Lalonde*, 509 F.3d 750, 757 (6th Cir. 2007); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Finally, these claims are without merit. Neither of them shows trial counsel labored under an actual conflict of interest. Where a criminal defendant can prove that his attorney actively represented actual conflicting interests, ineffectiveness will be found and there is no need to show prejudice resulting from the conflict. *Cuyler v. Sullivan,* 446 U.S. 335 (1980); *Thomas v. Foltz*, 818 F.2d 476 (6th Cir. 1987). The burden of proof of actual conflict is on the Petitioner. *Cuyler*, *supra*. The conflict must be actual and significant. *Thomas,* 818 F.2d at 481. The presumed prejudice standard of *Cuyler* is clearly established only when the conflict is due to multiple concurrent representations. *Mickens v. Taylor*, 535 U.S. 16 (2002). Counsel's representation of the victim's father was in an unrelated matter and had been concluded.

14

Expression of sympathy for the victim does not constitute a conflict of interest.

Manis' fourth sub-claim is that counsel failed to discuss defenses with him.  Respondent argues that this sub-claim is procedurally defaulted because it was not raised properly in the court of appeals (Return of Writ, Doc. No. 6, PageID 57-59).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138 (6th Cir. 1986); *accord, Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Manis attempted to raise this claim in a supplemental brief to the Ohio court of appeals.

15

That supplemental brief was stricken because it contained no certificate that it had been served on the other side (Entry Striking Appellant's Motion to Supplement Brief, Return of Writ, Doc. No. 6-1, PageID 179). In the entry, Magistrate Manning cited the relevant rules which apply. Those rules are adequate and independent grounds for the state court's decision. It is a fundamental matter of due process in our adversary system that, with rare, exceptions, a party may not make an argument ex parte to a court and the rule requiring a certificate of service is well suited to enforce that concern.

In his Reply, Manis argues it is unfair to hold him to that rule because Magistrate Manning sent the Entry Striking to Manis' appellate attorney instead of directly to Manis (Reply, Doc. No. 13, PageID 422). To the contrary, Manis asked for and was appointed an attorney to represent him on direct appeal. Having done so, he had no right to file separately from the attorney and notice to the attorney was appropriate. Further, Manis admits in his Reply that he did not send his supplemental brief to opposing counsel, but instead attempted to place that burden on the clerk of courts, which is not in compliance with the rule requiring service on an opponent.

Even if this Court were to excuse Manis' procedural default on his fourth sub-claim, it would still find the sub-claim to be without merit. Although Manis said at the hearing on the motion to withdraw the plea that there had been no discussion of defenses, he had sworn just weeks earlier at the plea colloquy that there had been such a discussion and he is bound by that statement.

But even assuming that there was no discussion of defenses and that constituted deficient performance on trial counsel's part, Manis has not proved any prejudice. He has not told this Court what defenses he thinks he had or why he believes he is actually innocent. Without proof

of prejudice, Manis' fourth sub-claim of ineffective assistance of trial counsel is without merit.

**Ground Four:  Double Jeopardy Based on Social Security Determination**

In his Fourth Ground for Relief, Manis claims that the prior Social Security determination that he is disabled by mental illness was entitled to *res judicata* effect in his criminal trial and failure to give it that effect violates the Double Jeopardy Clause.

As Respondent argues, this claim is barred by Manis' failure to raise it on direct appeal. It is also without merit because a Social Security disability proceeding is not a criminal trial and only a prior criminal trial can preclude a second trial under the Double Jeopardy Clause.  *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *North Carolina v. Pearce*, 395 U.S. 711, 717  (1969).

**Ground Five:  Failure to Appoint a Defense Mental Health Expert**

In his Fifth Ground for Relief, Manis asserts he was constitutionally entitled to appointment of a "defense" mental health expert.  "[W]hen a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue, if the defendant cannot otherwise afford one. . . [or] in the context of a capital sentencing proceeding, when the state presents psychiatric evidence of the defendant's future dangerousness. "  *Ake v. Oklahoma,* 470 U.S. 68 (1985).  Thus *Ake* does not require appointment of a psychiatrist who is somehow identified with the defense.  And the record makes clear no request for such an appointment was made by trial counsel.  Finally, as Respondent points out, this claim is

procedurally defaulted by failure to raise it on direct appeal.

**Ground Six: Double Jeopardy Because the Multiple Rape Convictions Violate Ohio Revised Code § 2941.25**

Manis asserts his multiple convictions and punishments for rape violate the Double Jeopardy Clause because they are allied offense of similar import, separate conviction for which is prohibited by Ohio's Allied Offense statute, Ohio Revised Code § 2941.25.

Respondent points out that this claim is also procedurally defaulted because it was not raised on direct appeal, but could have been decided from the record on appeal (Return of Writ, Doc. No. 6, PageID 61-62). That position is well taken and Manis offers no excusing cause.

Moreover, the claim is without merit. Manis did raise this claim in his Application for Reopening under Ohio R. App. P. 26(B). Deciding that Application, the Twelfth District found that "[e]ach rape was committed separately and with a separate animus over the course of nine days and therefore these crimes were not allied offenses of similar import." *State v. Manis*, Case No. CA2011-03-059 (12th Dist. Jan. 8, 2013)(unpublished, copy at Return of Writ, Doc. No. 6-1, Ex. 28, PageID 254.)

> Ohio Revised Code § 2941.25 provides:
>
> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

18

The Ohio Supreme Court has written:

> R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense. The statute states: "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

*State v. Underwood*, 2010-Ohio-1, ¶ 23, 124 Ohio St. 3d 365, 370 (2010).

The determination of the Twelfth District that these nine rapes were committed separately from each other and with a separate animus as to each is binding on this Court.  The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other."  *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984);  *Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.")  The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself. *Volpe v. Trim*, 708 F.3d  688 (6th Cir. 2013), *citing Albernaz*. "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes."  *Volpe, citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

19

The Twelfth District's decision also makes common sense. Committing rapes on nine consecutive days, even if it is of the same woman, are nonetheless separate criminal acts.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

January 30, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).